UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-80106-CV-MIDDLEBROOKS

GLOBAL DIGITAL SOLUTIONS, INC.,

    Plaintiff,

v.

GRUPO RONTAN ELECTRO METALURGICA, S.A.,
JOAO ALBERTO BOLZAN, and
JOSE CARLOS BOLZAN,

    Defendants.
_____/

## ORDER DENYING MOTION FOR RELIEF FROM DEFAULT JUDGMENT

THIS CAUSE comes before the Court upon Defendants' Verified Motion for Relief from Default Final Judgment, and from the Order on Motion for Judgment as a Matter of Law, filed on June 12, 2020. (DE 222). The Motion is fully briefed. (DE 232; DE 240). For the following reasons, the Motion is denied.

**I.    BACKGROUND**

This case is about Defendants' alleged breach of a Share Purchase and Sale Agreement ("the Agreement"). (DE 55 at ¶ 1). Grupo Rontan is one of the largest global manufacturers of emergency equipment used in specialty vehicles. (*Id.* at ¶¶ 11–12). It is exclusively controlled by the Bolzan brothers, who are the sole shareholders. (DE 135 at ¶ 2; DE 160). Grupo Rontan is a Brazilian company, and both Bolzan brothers are citizens and residents of Brazil. (DE 135 at ¶¶ 1–2; DE 160). Plaintiff is a U.S. company working in the security and technology field. (DE 55 at ¶¶ 3, 10).

In 2014, Plaintiff entered into negotiations to acquire Grupo Rontan. (DE 135 at ¶ 4; DE 160). These negotiations culminated in the execution of the Agreement on October 8, 2015. (DE 135 at ¶ 5; DE 160). It provided for transfer of 100% of Grupo Rontan to Plaintiff. (DE 55-1).

Although the Parties dispute the exact closing date of the Agreement, both sides appear to agree that it has passed. (DE 135 at ¶ 27; DE 160 at ¶ 27). To date, Defendants have not transferred the shares to Plaintiff. (DE 135 at ¶ 29; DE 160). Based on Defendants' failure to transfer the shares, Plaintiff initiated the present action. (DE 55). Plaintiff also argues that in addition to breach by non-performance, Defendants breached the Agreement by falsely stating in the Agreement that Grupo Rontan was up to date on taxes, when in fact it owed substantial back-taxes. (DE 205 at 3).

During this litigation, the Parties engaged in several discovery disputes. Plaintiff initially sent a request for production to Defendants in April 2019. (DE 195-1 at 8–18). Apparently, Defendants only produced eighteen emails in response to the request. (DE 194 at 4–5). Plaintiff maintained that this production was inadequate and subsequently filed a motion to compel, which I referred to Magistrate Judge Dave Lee Brannon. (DE 195-1). Judge Brannon found Defendants' initial search of documents to be inadequate and ordered the Parties to confer regarding revised search terms. (DE 102). Judge Brannon also required a new electronic search of Defendants' database utilizing the newly agreed-upon search terms. (*Id.*).

The discovery issues, however, were far from over. Plaintiff continued to dispute the adequacy of Defendants' search for responsive documents and production, prompting Plaintiff's filing of additional motions to compel. (DE 194 at 7–10). Judge Brannon conducted multiple discovery hearings and entered several orders resolving the Parties' various disputes, mainly in Plaintiff's favor. (DE 116; DE 129; DE 186). In one of Defendants' final discovery motions, they attempted to narrow the search terms applicable to their ESI production; however, Judge Brannon

denied that motion because Defendants had "proffered no valid basis for departing from what the parties agreed upon two months ago." (DE 186).

After several months of disputes relating to the adequacy of Defendants' production, Defendants were required to complete their search for ESI and produce responsive documents by January 6, 2020. (DE 186). On December 23, 2019, I allowed Defendants' counsel to withdraw due to Defendants' ongoing failure to pay counsel over $200,000 in fees. (DE 187; DE 190). At that point, I had already issued Orders on the Parties' respective summary judgment motions. (DE 181; DE 182). Defendants were required to retain replacement counsel or enter a *pro se* notice of appearance by January 15, 2020 (DE 190), and were advised that Grupo Rontan, as a corporation, was unable to proceed *pro se*. (DE 188). After their counsel was allowed to withdraw, Defendants stopped participating in this litigation. They failed to comply with the January 15, 2020 deadline to retain replacement counsel or enter a *pro se* appearance as to the individual Defendants. As such, Defendants also failed to comply with Judge Brannon's Order regarding the ESI production.

Further, Defendants failed to appear at a status conference (DE 198) and at Calendar Call (DE 201). At Calendar Call, Plaintiff waived its right to a jury trial and elected to proceed to a bench trial, which was scheduled for March 4, 2020. (DE 202). In addition to failing to comply with Judge Brannon's Order, my Order regarding replacement counsel, and failing to appear at multiple hearings, Defendants had also ignored several pretrial deadlines.

On February 28, 2020, I granted Plaintiff's Motion for Default Judgment under Federal Rule of Civil Procedure 37 and the Court's inherent authority. (DE 206 at 5, 7). I found that Defendants had willfully disobeyed numerous court orders and, in doing so, had acted in bad faith throughout the litigation. (*Id.* at 5). At that time, Defendants had not participated in the case in any manner since their counsel was permitted to withdraw; thus, in addition to violating court orders,

they failed to comply with deadlines set forth in the Pretrial Scheduling Order, such as the deadlines to file deposition designations and final witness and exhibit lists, and also failed to participate in the preparation of the pretrial stipulation. (*Id.* at 6). I determined that Plaintiff would be prejudiced if default was not entered, and that no lesser sanction would be adequate, particularly because after nearly two years of contentious litigation and shortly before trial, Defendants' counsel withdrew, and Defendants effectively abandoned this litigation. (*Id.* at 7). Therefore, I cancelled the bench trial and instead set an evidentiary hearing to determine damages. (*Id.*).

On the same day, I granted Plaintiff's Motion for Judgment as a Matter of Law (DE 205), which I reclassified as a Motion for Clarification. (DE 207 at 6). I found that (1) given the facts of this case, specific performance is an available remedy for Defendants' breach of the Agreement and (2) Plaintiff may obtain both the remedy of specific performance and incidental damages in the form of an offset in purchase price based on unpaid tax liability. (*Id.*). I directed Plaintiff to file a status report stating whether, given my ruling, the evidentiary hearing was necessary. (*Id.*). Pursuant to Plaintiff's representation that the hearing was no longer necessary, I cancelled the hearing and directed Plaintiff to submit a memorandum on damages. (DE 209). In April 2020, Plaintiff filed its damages memorandum (DE 213) and a supplement to the same (DE 220).

Then, in June 2020, before a final judgment was entered, Defendants' new counsel filed a notice of appearance and this Motion seeking relief based on excusable neglect from my Orders granting Plaintiff's Motion for Default Judgment and Motion for Clarification regarding remedies. (DE 221; DE 222).

## II.     LEGAL STANDARD

"On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;

. . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). However, Rule 60(b) motions "are directed to the sound discretion of the district court." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

To establish excusable neglect, "a defaulting party must show that: '(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply . . . .'" *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (citations omitted). The excusable neglect inquiry is "an equitable one" with "four factors pertinent to the analysis: 'the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Coniglio v. Bank of Am., NA*, 638 F. App'x 972, 974–75 (11th Cir. 2016) (alteration in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "[E]xcusable neglect encompasses situations of negligence within the defaulting party's control" and the prejudice prong of the analysis is of "primary importance." *Id.* at 975 (citing *Pioneer*, 507 U.S. at 388, 394, 397–99).

As for Rule 60(b)(6), which provides for relief based on "any other reason that justifies" it, the law is well established that such relief "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Griffin*, 722 F.2d at 680 (citation omitted).

## III. DISCUSSION

Defendants seek relief from (1) the Order granting Plaintiff's Motion for Default Judgment (DE 206) and (2) the Order granting Plaintiff's Motion for Clarification, in which I made certain rulings relevant to the types of remedies available to Plaintiff. (DE 207). (DE 222 at 1). Defendants primarily argue that I should find that their noncompliance with court orders constituted excusable

neglect. (*Id.* at ¶ 5). In support, they represent "it usually takes anywhere between 30 to 60 days to receive mail in Brazil from the United States" and, therefore, they first learned of their counsel withdrawing from the case on February 20, 2020, and of the Order granting default judgment in April 2020. (*Id.* at ¶¶ 6, 8). Defendants explain that upon learning of their attorney's withdrawal, they began attempting to retain new counsel in the United States, which they did not accomplish until June 2020, in part because of Defendants' inability to speak English and the effects of the ongoing pandemic. (*Id.* at ¶¶ 7–9).[1]

In addition to arguing that excusable neglect existed such that Defendants had good reason for failing to participate in this action since December 2019, Defendants state in a conclusory fashion that they have meritorious defenses, as set forth in their Answer and Affirmative Defenses (DE 61), and that any prejudice to Plaintiff that would result from granting their Motion is outweighed by the "strong policy of determining cases on their merits." (DE 222 at ¶¶ 12, 18). Finally, Defendants assert that the length of the delay is justified by the reasons for the delay—the mailing delay, language barrier, and ongoing pandemic—and that they acted in good faith by immediately filing the present Motion upon retaining new counsel in June. (*Id.* at ¶¶ 13–17).

In its Response, Plaintiff argues that Defendants have failed to establish that excusable neglect exists for the nearly four-month delay in moving to set aside the default judgment. (DE 232 at 5–6). In support, Plaintiff notes that Defendants' prior counsel stated in its motion to withdraw that it had explained to Defendants both the motion and the potential risk of default, and that my Order granting the motion to withdraw directed Defendants' prior counsel to provide

---

[1] Defendants also assert that the mailing delay, language barrier, and ongoing pandemic together constitute extraordinary circumstances that justify granting relief under Rule 60(b)(6). (*Id.* at ¶ 19). However, I find that those circumstances do not support granting relief based on excusable neglect, much less based on the "extraordinary remedy" of Rule 60(b)(6). *See Griffin*, 722 F.2d at 680.

Defendants with a copy of the Order. (*Id.* at 6). Additionally, Plaintiff states in its Response that Defendants communicated with Plaintiff's counsel in January regarding their search for replacement counsel in the United States and that, as required by my prior Order (DE 190), Plaintiff had sent all filings to Defendants via mail and email. (DE 232 at 7–8). Plaintiff further argues that Defendants' Motion fails to address "their pattern of willful and bad faith conduct" that began before their prior counsel's withdrawal, which prejudiced Plaintiff and ultimately resulted in the default judgment. (*Id.* at 8).

Plaintiff argues that vacating the default judgment at this time, after Defendants have violated numerous court orders and failed to participate in this action for nearly six months, would severely prejudice Plaintiff in part because Plaintiff had "spent hundreds of hours preparing for trial in February and March" and its expert was required to estimate incidental damages based on alternative sources in light of Defendants' failure to produce key documents. (*Id.* at 19–22).

Defendants' Reply reiterates that they did not learn that their counsel had withdrawn from the case until late February and argues that any prejudice to Plaintiff is outweighed by the policy favoring merits-based determinations. (DE 240 at ¶¶ 4, 9).

I have considered the Parties' arguments, applicable law, and the record as a whole, and I am not persuaded that Defendants have met their burden in establishing excusable neglect. First, Defendants fail to show that they "had a meritorious defense that might have affected the outcome." *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1295 (citations omitted). Rather than explaining how their affirmative defenses might have affected the outcome of this case, Defendants simply state that "[t]he fourteen defenses set forth in the Answer are re-alleged herein." (DE 222 at ¶ 18). This is insufficient. Second, Defendants have not demonstrated that granting the relief "would not result in prejudice to the non-defaulting party." *In re Worldwide Web Sys., Inc.*,

7

328 F.3d at 1295 (citations omitted). Although Defendants argue that any prejudice to Plaintiff is outweighed by other considerations, they fail to establish that granting their Motion would *not result in prejudice* to Plaintiff. In fact, Plaintiff will be severely prejudiced if Defendants' Motion is granted because of Defendants' abrupt failure to participate in this action after nearly two years of contentious litigation and shortly before trial, and because the resources expended by Plaintiff in preparing its damages memorandum was primarily a result of Defendants' failure to comply with discovery orders. Finally, Defendants have not shown that "a good reason existed for failing to reply." *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1295 (citations omitted). Even taking as true Defendants' assertion that they were unaware of their counsel's withdrawal until February 2020, they do not explain why, thereafter, they failed to notify the Court that they were seeking new counsel or to request a retroactive extension of the deadline for Defendants to retain new counsel.

The remaining factors which are relevant to the excusable neglect analysis also weigh against Defendants. I have already found that there is a danger of prejudice to Plaintiff, which is of "primary importance." *See Coniglio*, 638 F. App'x at 975 (citation omitted). The other considerations are "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 974–75 (quoting *Pioneer*, 507 U.S. at 395). These factors further support denial of Defendants' Motion.

Taking as true Defendants' assertions that it learned of its counsel's withdrawal in February 2020 and of the default judgment in April 2020 due to a mailing delay, they still failed to take any action on the record in response for four and two months, respectively. Although they had already failed to comply with several court orders and deadlines by that time, it was in the reasonable control of Defendants to notify the Court that they still intended to participate in this litigation and

8

were experiencing delays in retaining counsel due to a language barrier and the ongoing pandemic. Several months of unexplained silence from a party after years of litigation and shortly before trial was set to begin, on its own, would significantly impact any judicial proceeding. However, the impact here was even greater in light of the record, which contains various instances where Defendants willfully violated court orders and otherwise acted in bad faith in this litigation.

In sum, I find that Defendants have failed to establish excusable neglect for their failure to participate in this litigation for nearly six months. They point to no obstacles that prevented them from, prior to June 2020, notifying the Court of their attempts to obtain new counsel and intent to continue litigating this case, despite allegedly becoming aware of their counsel's withdrawal in February 2020 and of the default judgment in April 2020. Defendants therefore provide the Court no basis upon which to conclude that they acted in good faith such that the requested relief is warranted, particularly in light of the significant prejudice to Plaintiff that would result from vacating this Court's prior Orders.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Verified Motion for Relief from Default Final Judgment, and from the Order on Motion for Judgment as a Matter of Law (DE 222) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 28th day of October, 2020.

Donald M. Middlebrooks
United States District Judge

cc:   Counsel of Record