# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:18-80106-CIV-Middlebrooks/Brannon

GLOBAL DIGITAL SOLUTIONS, INC.,

    Plaintiff,

v.

GRUPO RONTAN ELECTRO METALURGICA, S.A.,
JOAO ALBERTO BOLZAN, and
JOSE CARLOS BOLZAN.

    Defendants.
_____/

## FINAL JUDGMENT

This action came before the Court on the Order Resetting Hearing Regarding Damages [DE 252]. The Court conducted an evidentiary hearing on December 2, 2020, on the evidence presented the Court finds as follows:

1.    This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between a citizen of a State (Florida) and citizens or subjects of a foreign state (Brazil).

2.    A Default was entered against Defendants on February 28, 2020 [DE 206]. Thereafter, the Defendants sought to vacate the default [DE 222], with said Motion being denied by Order dated October 28, 2020 [DE 245].

3.    Plaintiff is seeking damages relating to the breach of the Share Purchase and Sale Agreement ("SPA") under two alternative theories, the first is incidental damages relating to its

specific performance claim and the second is consequential damages relating to the breach of contract.

    4.    Plaintiff presented the testimony of Matthew Crow, the President of Mercer Capital. Mr. Crow testified regarding tax liabilities Defendant, GRUPO RONTAN ELECTRO METALURGICA, S.A. ("RONTAN"), could be subject to and fines RONTAN was at risk of being charged against. Mr. Crow testified that the issues relating to the non-compliance with the SPA were known to Plaintiff prior to the proposed closing date, which was December 31, 2015. The only issues not known at that time were the additional real estate encumbrances from 2020 and the debt in excess of that specified in the SPA that happened subsequent to the transaction date. Mr. Crow testified that he had no knowledge as to whether RONTAN had actually incurred or received any fines for the unpaid taxes which were identified in the KPMG documents he reviewed. He testified that there were taxes currently in litigation, but could not identify the amounts which are actually owed by RONTAN for past due taxes and fines. He was also unable to identify if RONTAN had actually been subject to any additional taxes, which were identified in the KMPG report that he relied upon. Mr. Crow testified that he has no knowledge of the Brazilian tax system or legal system as applied to challenges made for tax assessments. Mr. Crow's incidental damages calculation was based off speculation and conjecture with minimal factual support for his findings. Additionally, Mr. Crow testified to the actual damages Plaintiff has suffered from the breach of the SPA. Mr. Crow used a projection of income for RONTAN which may never occur. He testified that for the years of 2018, 2019 and 2020 he projected actual income and used past income to extrapolate projections moving forward. Once again the calculations performed by Mr. Crow were speculative and did not have factual support to substantiate his findings.

5. Plaintiff also presented the testimony of Paolo Tedesco who is an attorney in Brazil. Mr. Tedesco testified to how tax proceedings take place in Brazil. He testified regarding the different type of taxes companies are subject to in Brazil and had contradictory testimony as to whether the Brazilian government reduces taxes and/or fines. Mr. Tedesco testified that for the outstanding taxes identified by Mr. Crow, RONTAN has the option to plead for a discount. Mr. Tedesco then testified if a tax notice is issued by the government, the tax payer, upon receipt of the notice, can challenge the amount of taxes to the administrative authorities. After presenting the argument to the administrative authorities, the taxes could be upheld, reduced in part or reduced in total. If the tax payer prevails in the administrative proceedings the amounts subject to the tax will not be collected. Additionally, Mr. Tedesco testified that there are three situations which to determine the percentage of the fines attributed to unpaid taxes, which range from a twenty-five percent if the company confesses to the tax debt, seventy-five percent if the company does not confess, and one hundred percent if the tax notice is a cause of fraud. He went on to testify that depending on how quickly the tax debt is paid, it will also determine the discount the tax payer receives on a penalty issued. Mr. Tedesco did not provide any testimony as to whether the tax debts for RONTAN were subject to any of the discounted percentages for determining the amount of the fines which could be levied or whether they were reduced for timely payment.

6. Plaintiff also presented the testimony of Clovis Paulino, Rule 30(b)(6) Corporate Representative of RONTAN, who testified that at the time the SPA was signed there were taxes owed by RONTAN, but could not remember the amount.

7. Defendants presented Jose Carlos Bolzan who confirmed to the Court that the tax liabilities testified to by Mr. Crow are in fact being defended administratively and judicially. Mr. Bolzan stated that they have ten years to defend the claims. He also stated that the only reason

RONTAN is in such financial hardship is because of Plaintiff's failure to close on the transaction pursuant to the SPA.

8. Daniela Bolzan who is the administrator of RONTAN, also testified on behalf of Defendants. She set forth the mortgages identified by Plaintiff on the real property owned by RONTAN were not mortgages, but instead the Brazilian equivalent to a Lis Pendens. Ms. Bolzan stated the R$75 million is a notation from a judicial proceeding and if RONTAN prevails in the litigation, which was brought by a former owner of RONTAN, the encumbrance on the real property will be removed without RONTAN having to pay anything for it.

9. The SPA contains a clause titled "SPECIFIC CONDITIONS PRIOR TO CLOSING", which is contained in section 3 of the SPA. This section sets forth numerous conditions precedent to closing the transaction between the parties. A condition precedent requires the execution of an act after the contract has been entered but before the obligation to perform under the contract is triggered. *New South Communications, Inc. v. Houston Casualty Co.*, No. 19-12276, 2020 WL 6391222, at *5 (11th Cir. November 2, 2020). In this matter, the condition precedent represents an obligation to be performed by Plaintiff prior to the time the closing can occur. Section 3.1 states "The specific conditions to be satisfied prior to the Closing Date, in addition to the other conditions herein are as follows", with the remainder of the section setting forth certain conditions to be met prior to closing. There was also testimony that RONTAN was in violation of the conditions precedent contained in Section 3.1.4 and Mr. Crow testified that RONTAN was not in compliance with Section 3.1.7. Section 3.1.11 permits the satisfactory completion in Plaintiff's sole discretion of its due diligence review investigation of RONTAN and its business. Mr. Crow testified that the issues relating to the taxes and fines were discovered during the due diligence conducted by KMPG on behalf of Plaintiff. Section 3 concludes with the

following statement: "At its sole discretion, the Purchaser (Plaintiff) may waive its rights to request the fulfillment by the Sellers (Defendants) of any such conditions prior to the Closing Date. Any such waiver shall be granted in writing and duly signed by the Buyer's legal representative."

10. Section 4 of the SPA is titled "CLOSING", with Section 4.1 setting forth, "Subject to satisfaction or waiver of the conditions precedent provided in Section 3 of this Agreement, the closing of this Agreement shall take place within ten business days from the date of the issuance of the opinion of Kopelowitz Ostrow…or such other place agreed to in writing by the Parties.

11. Under Florida law damages awarded in specific performance are a way of compensation to adjust the equities between the parties to place them in a position that they would have occupied had the contract been timely performed. *Quantum Communication Corp. v. Star Broadcasting, Inc.*, 491 F.Supp.2d 1123 (SD Fla 2007). A court cannot rewrite the terms of a contract in an attempt to make otherwise valid contract terms more reasonable for a party or to fix an apparent improvident bargain. *Leverso v. Southtrust Bank of Alabama National Association*, 18 F.3d 1527 (11th Cir 1994).

12. If Plaintiff were to select the remedy of specific performance the Court would have to award damages that would put the parties in the position as if the SPA had been performed. As set forth by Mr. Crow, Plaintiff knew of the undisclosed tax issues prior to December 31, 2015, which was the originally closing date. These issues were discovered during the due diligence review performed for Plaintiff by KPMG. The other breaches alleged against RONTAN are now known to Plaintiff, which would be prior to closing. Furthermore, the incidental damages alleged by Plaintiff directly relate to the conditions precedent set forth in Section 3 of the SPA. If Plaintiff selects the remedy of specific performance without the conditions precedent being satisfied, it would have to decide whether to waive the conditions or not in order to close. If Plaintiff waives

the conditions precedent it can close, but it would not be entitled to receive incidental damages. If the conditions precedent are not waived, and the Court has determined the conditions were not satisfied, the SPA provides the remedy for Plaintiff, which is to terminate the contract. Section 9 of the SPA is titled "TERMINATION AND ABANDONMENT" and sets forth in Section 9.1 that "This Agreement may be terminated and the transaction herein contemplated may be abandoned at any time:", with Section 9.1.3 stating "by the Purchaser if it is not satisfied in its sole discretion with its due diligence review of Rontan and its Business", and Section 9.1.4 states "by the Purchaser or Seller, if any condition to closing as identified in Section 3 above is not satisfied on or prior to the Closing Date". Section 9 of the SPA clearly and unambiguously sets forth Plaintiff's options if it is not satisfied with the due diligence review and/or a condition in Section 3 is not satisfied. While it may be more equitable for the Court to award incidental damages with the specific performance remedy, this Court is bound by the terms of the SPA. Therefore, if Plaintiff selects the remedy of specific performance it is precluded from recovering any incidental damages pursuant to the SPA.

13. Furthermore, even if the SPA permitted the award of incidental damages if Plaintiff selected the remedy of specific performance it would not be entitled to recovery of said damages based on the evidence presented. Plaintiff has the burden of setting forth evidence to show within reasonable certainty that the Plaintiff suffered damages and that the damages flowed as the natural and proximate result of defendant's wrong conduct. *Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 517 F.2d 188, 191 (5th Cir 1975). The amount of damages must be capable of proof to a reasonable certainty and not left to speculation or conjecture. *Id.*

14. As set forth above, Mr. Crow's calculations were based off speculation and conjecture without factual evidence to support it. Mr. Crow testified RONTAN was at risk of

receiving these fines and being assessed additional taxes, but had no knowledge of whether RONTAN actually received said fines or additional taxes. Moreover, as to the fines, Mr. Crow was unable to testify to whether the amounts of the actual fines received by RONTAN, were actually received fines from the Brazilian government. Even if RONTAN did receive fines, as Mr. Tedesco testified, it would have the right to challenge the fines, or additional taxes, first in an administrative proceeding and thereafter in a judicial proceeding. Mr. Crow and Mr. Tedesco both admitted that if RONTAN prevailed on its challenge to the additional taxes or fines there may be no additional charges to RONTAN. If RONTAN did not receive additional taxes or fines, or if the additional taxes and/or fines were reduced in either an administrative or judicial proceeding, the calculations provided by Mr. Crow would be inaccurate. Mr. Jose Carlos Bolzan testified that RONTAN is actively challenging the fines and additional taxes. Mr. Tedesco testified that the statute of limitation period is five years for fines and taxes imposed at the administrative level and five years at the judicial level, but this period is uncertain. He also testified that in Brazil the process of contesting taxes and fines is confidential and there is no way of knowing the true amount due. Mr. Tedesco went on to state that if RONTAN prevails in the administrative proceeding any fine could be reduced to zero. Mr. Crow also testified regarding what he believed to be a mortgage on real property owned by RONTAN. However, his testimony was contradicted by Daniela Bolzan's testimony that the encumbrance is simply the Brazilian equivalent to a Lis Pendens as there is litigation pending with a former partner of RONTAN and the encumbrance will be lifted if RONTAN prevails in the lawsuit. Without additional information this Court cannot award incidental damages based off the speculative testimony and calculations provided by Plaintiff.

15. Furthermore, the benefit of the bargain damages testified to by Mr. Crow for breach of contract are also speculative. Mr. Crow used projections of income and cash flow to determine

the benefit of the bargain damages for three years of analysis without knowing that income or cash flow was actually made by RONTAN.

**IT IS THEREFORE ORDERED AND ADJUDGED AS FOLLOWS**:

16. Plaintiff is awarded specific performance and the Parties are ordered to comply with the SPA to close the transaction. Plaintiff is precluded from recovering the incidental damages it is seeking pursuant to the SPA, and even if it was entitled to incidental damages pursuant to the SPA, the damages were not proved with a reasonable certainty and are too speculative to be awarded to Plaintiff. Therefore, Plaintiff is not entitled to incidental damages.

17. Plaintiff's damages relating to the benefit of the bargain are also too speculative to be awarded as Plaintiff failed to meet its burden to prove damages with a reasonable certainty. Due to Plaintiff failing to meet its burden of proof no damages are available to Plaintiff for the breach of contract relating to the benefit of the bargain.

SIGNED in Chambers at West Palm Beach, Florida this _____ day of December, 2020.

 _____
 DONALD M. MIDDLEBROOKS
 UNITED STATES DISTRICT JUDGE

cc: Counsel/Parties of Record