IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:18-80106-CIV-Middlebrooks/Brannon

GLOBAL DIGITAL SOLUTIONS, INC.,

    Plaintiff,

v.

GRUPO RONTAN ELECTRO METALURGICA, S.A.,
JOAO ALBERTO BOLZAN, and
JOSE CARLOS BOLZAN.

    Defendants.
_____/

**REPLY OF DEFENDANTS TO PLAINTIFF'S RESPONSE AND OBJECTIONS TO DEFENDANTS' PROPOSED FINAL JUDGMENT WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants, GRUPO RONTAN ELECTRO METALURGICA, S.A. ("Rontan"), JOAO ALBERTO BOLZAN, and JOSE CARLOS BOLZAN, reply to Plaintiff's Response and Objections to Defendants' Proposed Findings of Fact and Conclusions of Law ("Response") [DE 268] pursuant to this Court's Orders [DE 261 and 266], and state:

<u>Numbers 3</u>

1.    Plaintiff once again attempts to hedge its election of remedies. Plaintiff is taking the position that it has elected the remedy of specific performance and incidental damages, but is requesting the Court retain jurisdiction to allow it to pursue damages under breach of contract "in the event that the remedy of specific performance and incidental damages is unfeasible or not practicably available." The Plaintiff appears to disregard the statement it made in its Proposed Final Judgment, on page 6, paragraph 12, which states, in part: "The Court found that (1) given the facts of this case, specific performance is an available remedy for Defendants' breach of the

Agreement and (2) Plaintiff may obtain both the remedy of specific performance and incidental damages in the form of an offset in purchase price on unpaid tax liability. *Citing* [DE 207 at p.6]. The Court has already ruled the remedy of specific performance is available and it may obtain incidental damages. However, the SPA does not permit Plaintiff to obtain incidental damages with specific performance due to the express terms of the SPA. It appears Plaintiff is attempting to hedge the election of remedy until after the Court has determined whether or not it would be entitled to incidental damages. When a plaintiff seeks to litigate two mutually exclusive causes of action an election between two inconsistent remedies must be made before the judgment is entered. *E.g. Eastern Portland Cement Corp. v. F.L. Smidth Inc.*, No. 8:08-cv-637-T-24 TBM, 2009 WL 4730545, at *1 (M.D. Fla. December 7, 2009) *citing Monco of Orlando, Inc. v. ITT Industrial Credit Corp.*, 458 So.2d 332, 334 (Fla. 5th DCA 1984). At this time both parties have submitted their Proposed Final Judgments, and it would be assumed that after the briefing being performed by the parties, the Court will enter a judgment. Plaintiff has elected the remedy of specific performance and upon entry of judgment the Court should not retain jurisdiction to permit Plaintiff to change the election made prior to judgment.

<u>Number 4(a)</u>

2. It appears Plaintiff did not fully understand the argument made by Defendants as it relates to the "closing date". This is simply a contract issue, and the SPA sets forth why the closing date is significant to the determination of incidental damages relating to specific performance. The conditions precedent set forth in Section 3 of the SPA have to be "satisfied" or "waived" prior to closing. Section 4.1 of the SPA provides that the closing would take place subject to the satisfaction or waiver of the conditions precedent. The significance of this section cannot be understated because if Plaintiff was aware of the non-compliance with any of the terms

in Section 3 prior to the closing, it has to either waive the non-compliance or terminate the contract pursuant to Section 9.1.3. Plaintiff attempts to persuade the Court that it did not know about the non-compliance prior to entering into the SPA, but that is irrelevant because Plaintiff had knowledge of the non-compliance prior to closing. Plaintiff's knowledge of the non-compliance of Defendants requires it to make a decision of waiving the breaches and closing or terminating the SPA and sue for damages. While Plaintiff may want the Court to re-write the SPA to permit this, the Court is not permitted to re-write the contract as it stands. *Leverso v. Southtrust Bank of Alabama National Association*, 18 F.3d 1527 (11th Cir 1994). The "bizarre legal principal" that Plaintiff believes the Defendants are traveling under is simple contract construction, and given the contract is unambiguous it must be interpreted pursuant to the terms therein. When a contract is clear and unambiguous, it is the Court's duty to enforce the contract as written, not rewrite it to make it more reasonable for one of the parties. *In re Jeffrey L. Miller Investments, Inc.*, 610 B.R. 692, 703 (M.D. Fla. December 4, 2019).

The second argument made by Plaintiff in this section fails to permit it to obtain incidental damages as well. Plaintiff argues that it should be put in the same position as it was if there was no breach. Looking at the facts of the case, if there was no breach there would have been tax debt owed at the time of closing so Plaintiff would have had to either waive the non-compliance or terminate the SPA. Mr. Crow's testimony regarding Rontan making payments for the taxes is completely irrelevant as Mr. Crow does not have the ability to modify the contractual terms either. The conditions precedent in Section 3 of the SPA are subject to be satisfied or waived prior to closing, and if they are not satisfied or waived then Plaintiff has the ability to terminate the SPA, those are the only contractual remedies available to Plaintiff.

The third argument made by Plaintiff is that the section appears to be an affirmative

defense that was not raised. There is no affirmative defense needed as we are only determining whether the SPA permits incidental damages to be awarded with the remedy of specific performance.

### Number 4(b)

3. Plaintiff attempts to convince the Court Mr. Crow used actual numbers to calculate his damages, when in fact he admitted on the stand he did not know whether the taxes or fines were charged to Rontan. [Tr. 49:13-24]. Furthermore, Mr. Crow admitted he had to estimate what the taxes would be in some instances based on the classification of goods. [Tr. 51:18-22]. Mr. Crow made estimates and speculated what he thought the taxes and fines would be without any personal knowledge. Plaintiff attempts to place the blame on Defendants for not participating in the litigation, and wants to believe that in the five years since the contract did not close it was unable to obtain information regarding the taxes and fines.

As to the tax liabilities Rontan had at the time of the execution of the SPA, it would fall under the same contractual language as set forth in paragraph 2 above. Plaintiff would have had the right to terminate the contract or sue for specific performance, but would not be entitled to incidental damages.

The third point relating to Mr. Tedesco's testimony does not consider the outcome of the tax litigation matters. Plaintiff is attempting to have the Court rely on amounts allegedly owed which are subject to pending litigation. In the litigation Mr. Tedesco discussed he confirmed the taxpayer is entitled to defend the action and can present a defense. [Tr. 112: 3-15]. If the taxpayer prevails in the litigation the amounts are not owed. [Tr. 112: 3-15]. The taxes found in the public records by Mr. Tedesco and presented during the hearing were nothing more than speculation of what the outcome of the pending litigation matters will be. As Mr.

Tedesco testified to, if Rontan prevails in the pending litigation matters it would not owe the taxes.

The fourth argument set forth by Plaintiff is that Defendants requested the Court to speculate as to whether the unpaid taxes would be charged to Rontan. Plaintiff has the burden of proof in this matter and it has not provided sufficient evidence to the Court to support its damages claim. Plaintiff places the blame on Defendants for not providing discovery documents, but as Mr. Tedesco testified to, once the taxes are in litigation the information is available to be accessed by the public. [Tr. 109:19 – 110:10].

## Number 4(c)

4. Plaintiff once again attempts to argue its damages by speculating. Plaintiff wants the Court to take the assumption that Mr. Crow properly speculated as to the projected cash flow of Rontan, and that Plaintiff would have "likely been more successful than were Defendants". [DE 268, at p.5]. The amount of damages must be capable of proof to a reasonable certainty and not left to speculation or conjecture. *Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 517 F.2d 188, 191 (5th Cir 1975). Mr. Crow's testimony was nothing more than speculation and conjecture of what the income would be for 2018-2020.

## Number 5

5. Plaintiff is asking for the Court to accept Mr. Tedesco as an expert, without offering him as one at the hearing, or listing him on its expert disclosure, which is improper. Additionally, there is a distinction to be made between pleading for a discount and challenging the tax or fine. Plaintiff harps on the point that a discount of the tax is not available today, but there was no testimony that Rontan attempted to obtain a discount. The evidence presented was that Rontan is defending the tax actions both administratively and judicially. [Tr. 86:21 – 87:1].

Rontan is not seeking a discount, it is challenging the debts altogether, so whether a discount is available or not is completely irrelevant.

### Number 6

6.      Mr. Paulino testified that there were taxes owed and he did not know the exact amount. However, said amount would be subject to the administrative and judicial proceedings, which could be completely wiped out if Rontan prevails on the challenges, as Mr. Tedesco testified to. [Tr. 111:17 – 112:2]. Whether the tax debt is going to be owed will not be fully determined until the litigation is completed.

### Number 7

7.      Plaintiff once again attempts to place the blame for it not knowing about the taxes due to Defendants bad faith litigation. Plaintiff admits the unpaid taxes were determined by KPMG during the due diligence. [Tr. 16:11 – 18:9]. As set forth in Section 3.1.11 of the SPA, Plaintiff had to be satisfied by the due diligence, and if it was not satisfied, it could waive the non-compliance or terminate the SPA. Plaintiff knew of the tax liability prior to closing and had the option to move forward or not, as set forth by the SPA.

### Number 8

8.      While Ms. Bolzan may not have used the word "lis pendens" in her testimony, she stated "It's in court, it is pending in court." The doctrine of lis pendens literally means "pending suit", so while Ms. Bolzan may not have used the words "lis pendens", she did testify that the encumbrance was placed on the property because the litigation is pending. If Rontan prevails in the litigation and Plaintiff is provided a R$75 million credit towards the purchase, it would be receiving a double payment because the encumbrance would be released and no payment would need to be made.

Numbers 9 and 10

9.     Defendants are not rearguing liability in these sections, they are simply specifying what is permitted pursuant to the express terms of the SPA.  Defendants do not ignore Section 5.12, instead they advise the Court Section 3.1.7 has the same terms.  Those terms are included in the conditions precedent and have to be satisfied or waived prior to closing.  As much as Plaintiff wants the Court to re-write the SPA, it cannot.  Plaintiff does not believe this is a damage issue, however, the Court has to follow the SPA and the SPA says in order to close the conditions precedent have to be satisfied or waived.  When determining incidental damages the Court has to follow the contract and if the contract does not allow for those damages, even though they may normally be available in a specific performance claim, the damages cannot be awarded.  Defendants' argument goes directly to the damages being claimed and not the underlying facts of the case.

In addition, as to the express representations and warranties, those are included in the conditions precedent.  If Rontan breached sections 5.12 and/or 5.13 Plaintiff can sue for damages or specific performance.  However, if specific performance is awarded and a closing is ordered by the Court, the Court is bound by the terms of the contract.  Defendants are not claiming the breach is excused, instead Defendants are stating that given Plaintiff's election of specific performance the express terms of the SPA do not entitle it to incidental damages.

Number 11

10.    Plaintiff continues the same argument that it should be put in the position as if the closing took place with no breach.  The SPA contemplates what will happen in this instance and the Court is bound to follow it.  Defendants are not stating Plaintiff would not be entitled to the benefit of the bargain damages for the breach, if the damages were proved with reasonable

certainty, only that once the remedy of specific performance is elected the SPA governs the closing and the non-compliance would have to be waived by Plaintiff in order to close.

### Number 12

11. Once again, Defendants are not arguing liability, only the fact that the incidental damages are not awardable pursuant to the SPA's express terms. Defendants agree with Plaintiff in that Plaintiff has the right to terminate the SPA or abandon the transaction if the conditions precedent are not met. Defendants also agree that the Court set forth Plaintiff may obtain specific performance and incidental damages. If the SPA did not require the waiver of the conditions precedent as a requirement to close the transaction then Plaintiff would be entitled to incidental damages. However, the wording of the SPA is clear and requires the conditions be satisfied or waived in order to close. If Plaintiff had elected to terminate the transaction then the SPA permits damages. If Plaintiff elects specific performance, which it did, incidental damages are not available under the SPA for the terms Defendants did not comply with.

### Number 13

12. Defendants believe this case is distinguishable from *Qantum Communications Corp. v. Star Broadcasting Inc.*, 491 F.Supp.2d 1123 (S.D. Fla. 2007). In *Qantum Communications Corp.*, the Court noted that Quantum was able to prove lost profit damages with reasonable certainty as it showed "that 1) the defendant's action caused the damage and 2) there [was] some standard by which the amount of damages may be adequately determined." *Id.* at 1130. At the hearing on damages, and in the expert report, the expert presented an acceptable standard by which Qantum's lost operating profits can be adequately determined. In this case, at the hearing on damages, Plaintiff failed to provide any standard, formula, or proved with certainty what information Defendants had in their possession which would have permitted

Plaintiff to calculate the alleged damages properly. All allegations made by Mr. Tedesco, who is not an expert, and by Mr. Crow were simply based on conjecture and speculation and as a result nothing was ever established with certainty. Furthermore, although in *Qantum Communications Corp.*, the Court noted that it was not premature for the Court to determine the amount of Qantum's damages should Defendants fail to provide a tower lease since there were no reasonable assurances provided on the record and there was supportive evidence establishing that Qantum lost its lease with the landlord, the situation at hand is totally different in this case. *Id.* at 1132. At the hearing on damages, there were no documents and/or evidence provided by Plaintiff to support its attempt for the Court to prematurely determine an amount of damages in its favor. As stated above, Rontan is in the middle of pending litigation regarding tax debt allegedly owed and whether the tax debt is going to be owed will not be fully determined until the litigation is completed. If Rontan prevails in the litigation and Plaintiff is provided a R$75 million credit towards the purchase, it would be receiving a double payment because the encumbrance would be released and no payment would need to be made, which would be improper. In *Qantum Communications Corp.*, Qantum clearly was unable to provide any reasonable assurances or alternatives as it lost its lease needed for the tower, but Rontan has not lost the pending litigation and it is actively pursuing all its available options which demonstrate that there are alternatives available to Plaintiff once it all comes to a resolution.

<u>Number 14</u>

13. While Plaintiff can claim breach of the SPA due to the default, the damages still need to be proven with reasonable certainty. Plaintiff states that "without an award of incidental damages to account for these negative economic factors, GDSI will be buying a company far differently situated than it contracted for. That is not the law." Plaintiff continues to disregard

the SPA's express terms.  Plaintiff is bound by the terms of the SPA and given it has elected the remedy of specific performance, it is not entitled to incidental damages.  Plaintiff had the option of the benefit of the bargain damages for breach of contract and elected against moving forward with that remedy.  Therefore, Plaintiff is bound by the SPA and if the Court awards specific performance, Plaintiff must waive the non-compliance with the SPA in order to close the transaction.

### Number 15

14.     Defendants are not asking the Court to use hindsight, they are simply asking the Court to review the evidence presented.  The evidence presented by Mr. Crow as to the benefit of the bargain damages was derived by using speculation to get to the ultimate damage number, and was not proven with reasonable certainty.  *Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 517 F.2d 188, 191 (5th Cir 1975).

### Numbers 16-17

15.     For the reasons set forth herein, Defendants request the Court enter the Proposed Final Judgment it submitted.  Plaintiff once again requests the Court to retain jurisdiction to change its election of remedy after judgment.  As set forth above, the election must be made prior to the final judgment being entered.  *E.g. Eastern Portland Cement Corp. v. F.L. Smidth Inc.*, No. 8:08-cv-637-T-24 TBM, 2009 WL 4730545, at *1 (M.D.Fla. December 7, 2009) *citing Monco of Orlando, Inc. v. ITT Industrial Credit Corp.*, 458 So.2d 332, 334 (Fla. 5th DCA 1984).  The law does not permit for the election to be made after judgment, which is what Plaintiff is attempting to do.

Dated this 7th day of January, 2021.

           Reifkind, Thompson & Rudzinski, LLP
           Attorneys for Defendants
           3333 W. Commercial Blvd., Suite 200B
           Fort Lauderdale, FL 33309
           Tel: (954) 370-5152
           Fax: (954) 370-1992
           Email: bgottlieb@rtrlaw.com
                   msued@rtrlaw.com

By: /s/ *Brian D. Gottlieb*
     BRIAN D. GOTTLIEB, ESQ.
     F.B.N. 0015302

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of January, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on Plaintiff's counsel of record, Carlos Sires, Esq. – csires@bsfllp.com and William Isaacson, Esq. – wisaacson@bsfllp.com, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Noticed of Electronic Filing.

By: /s/ *Brian D. Gottlieb*
     Brian D. Gottlieb, Esq.
     Florida Bar No. 0015302