UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80106-DMM

GLOBAL DIGITAL SOLUTIONS, INC.,

    Plaintiff,

vs.

GRUPO RONTAN ELECTRO METALURGICA, S.A.,
JOAO ALBERTO BOLZAN, and
JOSE CARLOS BOLZAN,

    Defendants.
_____/

### PLAINTIFF GLOBAL DIGITAL SOLUTIONS, INC.'S REPLY IN SUPPORT OF ITS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (DE 267-1)

    Plaintiff Global Digital Solutions, Inc. ("GDSI"), pursuant to this Court's orders dated December 3, 2020 (DE 261) and December 21, 2020 (DE 266), submits this Reply in Support of its proposed findings of fact and conclusions of law (DE 267-1) and in Response to Defendants' "Response and Objections of Defendants to Plaintiff's Proposed Final Judgment with Findings of Fact and Conclusions of Law" (DE 269) ("Defendants' Objections").

### RESPONSES

### Defendants' Objections, Paragraph 2
### (Plaintiffs Proposed Findings of Fact 4 through 19)

    It is appropriate for the Court to include in a Final Judgment a section discussing the background of the proceedings. The "Background" section sets forth matters which have been deemed admitted by virtue of the default judgment entered by the Court, *see Gonzalez v. E.M.J. Patrol & Investigations Inc.*, 2009 WL 1851098, at *2 (S.D. Fla. 2009) ("One consequence of a default, is that all well-pled allegations in the complaint are taken as true.") (citing *Nishimatsu*

*Const.Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)), in addition to reciting other prior rulings of the Court, all of which serve to put in context the findings of fact and conclusions of law. Defendants' complain that these paragraphs "contain factual matters that occurred outside of the hearing on damages…." But that is precisely why they are included in the "Background" section and not in the "Findings of Fact."

### Defendants' Objections ¶ 4, ¶ 6, ¶ 7, ¶ 9, ¶ 10
### (Plaintiffs Proposed Findings of Fact 33, 35, 36, 39 & 40)

The singular thrust of Defendants' objections to these Proposed Findings of Fact is to ask the Court to speculate in *their* favor. It is not disputed that, at the time that Defendants represented and warranted in the SPA that Rontan had "timely paid" all of its taxes and had thus "complied" with all of its tax obligations (GDSI's Proposed Finding of Fact ¶ 28), Rontan in fact had hundreds of millions of Reals in unpaid and undisclosed tax liabilities stretching back for years (*Id*. at ¶ 37.) It is also not disputed by Defendants that Rontan is currently involved in proceedings where it challenges tax obligations twice the amount of those opined to by Mr. Crow. (Hr'g Tr. at 53:11-13.)

It is thus that Defendants ask the Court to speculate; they argue that "*if*" they successfully challenge their tax obligations, the taxes and fines "could be" lowered or eliminated. (Defendants' Objection at ¶4 ("the taxes and fines can be challenged and *could be* lowered or eliminated through administrative and judicial proceedings"); *id.* ¶6 ("Plaintiff is attempting to imply to the Court that the taxes and fines *could not*, or would not, be reduced"); *id.* ¶7 ("upon the administrative proceeding being concluded, there *could be* a discount to the tax payor"); *id.* ¶9 ("if Rontan is successful in challenging the amounts owed there *could be* no taxes or fines owed"); *id.* ¶10 ("*If* Rontan prevails on the challenge to the amounts accessed the debts will not have to be paid.") (all emphasis added).

Defendants' speculative arguments as to what "could be" are unavailing. Judge Martinez's Order on damages in the *Qantum* case is instructive on this point. *See Qantum Communications Corp. v. Star Broadcasting, Inc.,* 491 F.Supp.2d 1123 (S.D. Fla. 2007). As is the case here, the court in *Qantum* entered a default as to liability pursuant to Federal Rule 37 and the court's inherent authority, based on Defendants' willful discovery violations. The effect of the default judgment was to establish as fact that Defendant sellers breached a purchase agreement under which Plaintiff Qantum agreed to buy the assets of Fort Walton Beach radio station WTKE-FM (the "WTKE Assets") from Defendants for $3 million. As is the case here, the court in *Qantum* also determined that plaintiff was entitled to the remedy of specific performance with incidental damages. At the hearing on damages, Plaintiff sought lost profits, and also sought additional incidental damages in an amount that would compensate for the Defendants' failure to provide a tower lease at the Closing, as the tower lease was critical for the ability of the Plaintiff to realize the benefit of its bargain with the Defendant Sellers. Defendants argued that it was premature for the Court to award these tower-lease damages because it was possible that the Defendant could mitigate their damages by obtaining an alternative tower lease prior to the closing. The Court flatly rejected this argument, stating that "there are no assurances that Qantum can obtain space on a tower that would allow Qantum to broadcast WTKE at full power, or at the height in which WTKE currently broadcasts on the Ft. Walton Beach Tower," and that Defendants were "not able to identify any specific alternatives." Thus, the Judge Martinez held that "it is not premature for this Court to determine the amount of Qantum's damages should Defendants fail to provide a tower lease at Closing and that Qantum is entitled to damages." 491 F.Supp.2d at 1131-32.

The same holds true here. Defendants argue that they may somehow escape liability for their admitted tax obligations, and that they may somehow lift the R$75 million lien that they admit has been placed on Rontan's real estate. But as in *Qantum*, there are "no assurances" that any such mitigation will

3

occur, and it is "not premature for this Court to determine the amount of [GDSI's] damages should Defenants fail" in their efforts to mitigate. *Qantum,* 491 F.Supp.2d at 1131-32. The fact remains that Defendants entered into an agreement to sell shares of a company that had paid all of its tax obligations. It had not. Mr. Tedesco testified that it is essentially a certainty that Rontan's taxes will not be materially reduced, much less reduced to *zero* Reals.

Defendants' request that the Court engage in rank speculation that they can somehow eliminate even one Real of the tax obligations must be rejected. Defendants' argument falls of its own weight: they have ***admitted*** the tax liabilities to which Mr. Crow testified (Hr'g Tr. 86:21-23) but ask that the Court ***speculate*** as to how those liabilities could hypothetically be affected through their unspecified challenges. Defendants' argument misses the mark: they represented that Rontan had paid its taxes. It had not. It was upon them to come into compliance with that contractual representation. They did not. So now they ask the Court to speculate as to their chances to succeed in challenging their tax obligations. That, the Court cannot do.

### Defendants' Objections ¶¶ 12, 13
**(Plaintiffs Proposed Finding of Fact 45)**

This objection improperly argues a liability issue—the rights of GDSI under the SPA—rather than an issue of damages. That said, the objection is predicated on an absurd reading of the SPA. Defendants argue that because "Rontan did not satisfy the conditions precedent of Section 3 of the SPA," GDSI is limited to "either waive the non-conformity or terminate the SPA." Not surprisingly, Defendants fail to cite any law to support their position. There is none. Were Defendants' correct, the SPA would have been meaningless. They would have been free to breach any representation and, if their misfeasance was detected, they could simply walk away. That is not how the law of contracts operates. The SPA provides that Defendants were required to satisfy the condition that their representations and warranties be "true, complete and

4

correct in all material respects as of the Closing date." (SPA at § 3.1.4.)  While GDSI had the right to *waive* that condition, it never did.  The result is not, as Defendants seem to suggest, that GDSI had the Hobbesian choice of accepting Defendants' breach of their contractual obligation and acquire Rontan subject to the undisclosed taxes or walk away from the contract they worked hard to strike with Defendants.  That is not the law and it is not what the SPA provides.  Contrary to the Defendants' wrongheaded view, GDSI has the right to enforce that contract according to its terms.  The Court has already found that Defendants' breach of the SPA entitles GDSI to the remedy of specific performance and incidental damages.  (DE 205.)

Separately, Defendants' assertion that "the incidental damages were not proven with certainty" is not a complaint that the amount of taxes which Mr. Crow testified are not due.  On the contrary, Mr. Bolzan himself confirmed that they are.  (Hr'g Tr. 87:21-23 (confirming the tax liabilities as to which Mr. Crow testified.))  Defendants' complaint is that the tax liabilities may—hypothetically—be forgiven by the Brazilian government, although there is zero basis to conclude that is even remotely likely to happen.  In fact, because Mr. Crow's conclusion as to the tax liabilities is less than half of the amount Mr. Bolzan admitted is being disputed, Rontan would have to achieve the spectacular result of reducing its tax liabilities by over 50% if it is going to owe less than Mr. Crow testified.  There is no basis to so conclude.

It is *that* rank speculation in which the Court may not indulge.  That is particularly the case because there is no dispute that Defendants were required to turn over a company without unpaid tax obligations upon closing.  They can still choose to do that when they specifically perform the SPA by paying the taxes.  But if they do not (and they have not offered to do so) the incidental damages are necessary to place GDSI in the position it would have been in had Defendants performed their part of the bargain.  Put another way, Defendants' argument is that

5

they are entitled to litigate for however many years and with whatever minimal chance of success tax obligations that they falsely represented did not exist, while GDSI, the innocent party, apparently now must accept the company with the baggage of the unpaid tax obligations, ***which is precisely the opposite of what it bargained for***.

To be sure, the argument that a portion of the taxes may be forgiven is really a red herring. Defendants themselves have admitted that they misrepresented their tax compliance. Mr. Bolzan at the hearing confirmed that the taxes Mr. Crow based his opinion on ***are in fact due***. So, there is absolutely no question that the only way to place GDSI in the position it would have been if Defendants had not breached the SPA is to award incidental damages that will avoid the tax liabilities it bargained to avoid. Defendants' argument boils down to a request that its breach of the SPA be ignored, while GDSI should have to suffer the consequence of Defendants' wrongful conduct. But the law does not reward the wrongdoer and punish the innocent. Yet, that is precisely what Defendants urge the Court do.

Any claim by Defendants that GDSI did not produce sufficient evidence as to the amount of the admitted tax obligations also fails. Mr. Crow relied upon audit work performed by KPMG, which included work papers explicitly discussing Rontan's financial condition (none of which was challenged by Defendants). In any event, damages are properly awarded upon the best information available to GDSI. *McCall v. Sherbill*, 68 So. 2d 362, 364 (Fla. 1953) (rejecting defendant's challenge to proof of damages because if defendant "had any records as to the number of loads, he had an opportunity to produce such records"); *see also Dominguez v. UAL Corp.*, 666 F.3d 1359, 1364 (D.C.C. 2012) (quoting *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (it is "settled principle that it is improper to insist upon 'precise proof' of the amount of damages when 'the defendant by his own wrong has prevented a more precise

computation.'"). In short, where a defendant violates its obligation to produce documents relevant to an element of damages, it cannot later complain about the damages being determined based upon a "reasonable estimate." *In re Victor International*, 97 Fed.Appx. 365, 369 (3d Cir. 2004).

### Defendants' Objections ¶ 14
### (Plaintiffs Proposed Finding of Fact 46)

For the reasons discussed herein, GDSI is entitled to incidental damages.

### Defendants' Objections ¶ 15
### (Plaintiffs Proposed Findings of Fact 47-48)

This objection misapprehends the methodology for benefit of the bargain damages. Under Florida law, it is well-settled that "[d]amages for a breach of contract should be measured ***as of the date of the breach***." *Grossman Holdings, Ltd. v. Hourihan*, 414, So.2d 1037, 1040 (Fla. 1982) (emphasis added). That means that hindsight is not permitted. Thus, it was the value of the shares as of the date of Defendants' breach (when they refused to hold a closing and transfer the shares) upon which damages must be calculated. Defendants instead urge that damages be determined with the benefit of the 20/20 hindsight that they did a lousy job running the company in 2016 and beyond. But "[f]luctuations in value after the breach do not affect the nonbreaching party's recovery." *Id*. It is easy to see why that is the case. For example, had Defendants not breached the SPA and operated Rontan with better economic results than Defendants had projected prior to the sale, Defendants would surely object to assigning a higher value to the shares due to the better post-closing performance of Rontan. However, Defendants want to reap the benefit of Rontan's poor operating results under their watch after they breached the SPA by retroactively lowering the value of the company. That flies in the face of Florida

law's requirement that compensatory damages are to be calculated as of the date of the breach—and not based upon post-breach events with the benefit of hindsight.

### Defendants' Objections ¶ 17
**(Plaintiffs Proposed Conclusion of Law 3)**

As this Court has found, Defendants have acted in bad faith throughout the litigation. As the Court has also found, that bad faith prejudiced GDSI's prosecution of its case. Defendants concede that there is authority, cited in connection with GDSI's reply to Defendants' objection to its Finding of Fact 45, that precludes them from challenging the sufficiency of the damages evidence. The argument that GDSI failed to "prove" that Defendants had access to their own tax information, real estate records, and banking records, so that the exception is not applicable, is specious. Of course, Defendants had access to those records. They never once claimed they did not. In fact, they were defaulted because they failed to produce those (and other) records. That said, the fact remains that Mr. Crow was able to properly opine on damages based on the extensive due diligence audit work performed by KPMG in connection with the transaction, work Defendant concedes is the type of information upon which Mr. Crow could properly rely in reaching his expert opinions. (Defendants' Objections at ¶ 19 ("Mr. Crow may have relied on information normally used by experts").)

### Defendants' Objections ¶ 18
**(Plaintiffs Proposed Conclusions of Law 4-8)**

These proposed Conclusions of Law accurately set forth the Court's *in limine* rulings and rulings on objections made during the hearing. There is nothing improper about this proposed paragraph.

**Defendants' Objections ¶¶ 19, 20**
(Plaintiffs Proposed Conclusions of Law 9-11)

These objections mirror those made with respect to the proposed Findings of Fact discussed above. First, Mr. Crow did testify as to the actual imposition of fines. (Hr'g Tr. at 45:14-19.) Second, with respect to fines not yet actually imposed, he testified that those still were real liabilities of Rontan. (*Id*. at 47:8-20.) Defendants essentially argue that, if a failure to pay a tax liability has not yet been uncovered, it does not exist. That is a silly argument. As Mr. Crow testified, to the purchaser of a company that has bargained to buy the company free of tax obligations, these "were still liabilities to the buyer that they would be assuming if they bought the business." (*Id*. at 47:17-18.) As Mr. Crow agreed, "[t]he fact of the matter is that these were obligations" of Rontan. (*Id*. at 65:11-13.) That is not changed by the fact that Rontan has not yet been made to pay the taxes or fines. (And, as admitted by Mr. Bolzan the statutes of limitations have not run.) In the SPA, Rontan did not represent that it was seriously delinquent in its tax obligations, but that it was hopeful that its wrongful conduct would not be uncovered.

It is undisputed that Rontan did not pay its taxes. It is not controverted that failing to do so subjects it to liability. Defendants' argument overlooks the evidence in the case. Not only did Mr. Crow opine on the tax liabilities, in part relying upon the KPMG audit, but Mr. Bolzan himself admitted that those liabilities exist and "they are in process." (*Id*. at 86:21-23 ("Q: So the liabilities that you say are in the process, are those the tax fines that were testified to by Mr. Crow? A: Okay, yes, but they are in the process.").) By the process, he meant the tax proceedings in which Rontan is engaged. (*Id*. at 86:23-87:1.) So, to be clear, there is ***no dispute*** that the tax liabilities exist.

Defendants do not—and cannot—dispute that their representation that Rontan had paid its taxes was false; nor do they contest that Rontan currently has over R$800,000 million in tax

9

liabilities (more than twice the amount Mr. Crow testified to). Their argument is that, *if* they are somehow spectacularly successful in their challenges (*i.e.*, pure speculation), some of the tax liabilities may be reduced. There is no hint that is going to happen, of course. And by Mr. Bolzan's admission, that could take 10 years to develop. (*Id.* at 87:1.) In fact, the statute of limitations is tolled on these tax obligations for years. (*Id.* at 105:1-5.) GDSI cannot be expected to shoulder the existing tax obligations that Defendants failed to disclose.

Defendants' remaining objection is predicated on its misapprehension of the breach of contract damages methodology applicable here, as discussed above in connection with Defendants' objections to proposed Findings of Fact 47-48.

## Defendants' Objections ¶ 21
### (Plaintiffs Proposed Conclusion of Law 12)

For the reasons GDSI discussed in its Proposed Findings of Fact and Conclusions of Law, it is appropriate for the Court to allow GDSI to re-elect its remedy if events (for example, Defendants transferring or encumbering the shares) render the remedy of specific performance implausible or insufficient.

## Defendants' Objections ¶ 22
### (Plaintiffs Proposed Conclusion of Law 13)

As this Court has already decided, incidental damages are appropriate. As discussed in GDSI's Proposed Findings of Fact and Conclusions of Law, GDSI has proved its entitlement to incidental damages. GDSI is entitled to set-off those damages against the purchase price in the SPA.

## Final Judgement

For the reasons discussed above, GDSI is entitled to damages incidental to specific performance and to set-off those damages against the SPA's purchase price.

Dated: January 7, 2021					Respectfully submitted,

						BOIES SCHILLER FLEXNER LLP


						By: */s/ Carlos M. Sires*

							Carlos M. Sires, Esq.
							(Florida Bar No. 319333)
							James M. Grippando, Esq.
							(Florida Bar No. 383015)
							401 East Las Olas Blvd., Suite 1200
							Fort Lauderdale, Florida 33301
							Telephone: (954) 356-0011
							Facsimile: (954) 356-0022
							csires@bsfllp.com
							jgrippando@bsfllp.com



							William A. Isaacson, Esq.
							(*pro hac vice*)
							5301 Wisconsin Avenue, NW
							Suite 800
							Washington, DC 20015
							Telephone: (202) 237-2727
							Facsimile: (202) 237-6131
							wisaacson@bsfllp.com

						*Attorneys for Global Digital Solutions, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via the court's CM/ECF System on January 7, 2021.

By: /s/ *Carlos M. Sires*
Carlos M. Sires, Esq.